545 A.2d 67

Janice E. HEFFNER, et al.

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 1084, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Aug. 4, 1988.

Andrew Janquitto (Richard C. Burch and Mudd, Harrison & Burch, on the brief), Towson, for appellants.

Anthony M. Ventre, Associate Co. Atty. (Clyde H. Sorrell, Co. Atty. and Joann Robertson, Sr. Asst. Co. Atty., on the brief), Rockville, for appellees.

Argued before GARRITY, BLOOM, and ROBERT M. BELL, JJ.

GARRITY, Judge.

This appeal presents us with the question of whether Montgomery County (appellee) may successfully assert a defense of governmental immunity to a claim for injuries sustained by Janice E. Heffner (appellant)[1] when she slipped and fell on the lobby floor of the Montgomery County Judicial Center (courthouse). In the Circuit Court for Montgomery County, appellant argued that appellee implicitly waived its immunity relative to the courthouse by its enactment of the Montgomery County Building Code. Mont. County Code, § 8 *et seq.* Appellee, of course, contended that the enactment of the building code in no way effected a waiver of its governmental immunity. The trial court concurred with appellee's position and dismissed with prejudice appellant's complaint against the appellee. From that dismissal, appellant noted this timely appeal asserting:

1. That the circuit court erred in ruling, as a matter of law, that the courthouse was a governmental function; and

2. That the circuit court erred in not ruling that appellee waived its immunity relative to the courthouse by virtue of its enactment of the building code.

### *Facts* [2]

On 29 November 1984, appellant was in the employ of the State of Maryland working as a Support Enforcement Officer in the Montgomery County Courthouse. At approximately 8:15 a.m. appellant slipped and fell on the court-

---

1. The appellants in this case are actually Janice E. Heffner, her husband, and their four children. For convenience, however, we shall refer to these parties as appellant because all the claims are related to the claim presented by Janice E. Heffner.

2. Since appellant's complaint was dismissed pursuant to Md. Rule 2–322(b), we are required to recite the facts as pleaded by the appellant and assume their veracity. *Tadjer v. Montgomery County,* 300 Md. 539, 479 A.2d 1321 (1984); *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 322 A.2d 544 (1974); *Desser v. Woods,* 266 Md. 696, 296 A.2d 586 (1972).

house's lobby floor, sustaining serious and permanent injuries primarily to her back, for which she has required extensive and costly medical attention. Her injuries also left her unable to work, resulting in a loss of income.[3]

Appellant filed a complaint in the Circuit Court for Montgomery County against appellee, the owner of the courthouse; Blake Construction, Inc., the builder of the courthouse; and Rockville Glass Service, Inc., the maintenance company responsible for the repair of the courthouse's skylights. The complaint asserted that appellant slipped and fell because all three defendants were negligent in permitting a skylight in the roof over the courthouse lobby to leak water, thereby causing the lobby floor to be wet and dangerous. The complaint against appellee consisted of three counts: count one—appellant, on her own behalf, claimed damages of two million dollars for the injuries she sustained; count two—appellant and her husband, individually and as husband and wife, sought damages of one million dollars for loss of consortium; count three—appellant's children, individually and by guardians and next friends, asked for one million dollars in damages for loss of maternal services.

Appellee answered the appellant's complaint asserting its governmental immunity as to counts 1 and 2. As to count 3, the appellee moved for its dismissal. On 9 July 1986 the circuit court granted the appellee's motion and dismissed count 3 with prejudice. Following that dismissal, the circuit court held two hearings relative to the appellee's assertion that counts 1 and 2 should be dismissed on governmental immunity grounds. On 10 July 1987, the circuit court granted the appellee's motion and dismissed with prejudice counts 1 and 2. As a result of that dismissal, the appellee was no longer a party to the case as all the counts against it

---

3. At the hearing below, it was noted that appellant had already received Workers' Compensation benefits from the State. *See,* Md. Ann.Code, art. 101, § 21(a)(2) (State as an employer is subject to the Workers' Compensation Act).

had been dismissed with prejudice. All counts against the appellee having been dismissed, the circuit court ordered that a final judgment be entered in favor of the appellee against the appellant pursuant to Md. Rule 2–602(b) thereby permitting this appeal to be brought despite the fact that the appellant's claims against the other defendants are still unresolved. *See, Hatzinicolas v. Protopapas,* 73 Md.App. 271, 273–74, 533 A.2d 1311 (1987), *cert. granted,* 312 Md. 196, 539 A.2d 230 (1988).

## Law

### I.

Appellant asserts that the circuit court erred when it ruled, as a matter of law, that operation and maintenance of the courthouse was a governmental function. Appellant contends that the determination of whether operating the courthouse is to be deemed a governmental or a proprietary function is a factual one. Specifically, appellant argues that this factual determination required an evidentiary hearing to determine whether appellee derived a profit from its operation of the courthouse. We disagree with appellant's position and shall explain.

"The king can do nothing wrong." *Browne's Blackstone's Commentaries,* p. 78. It is from this premise that England created the common law doctrine of sovereign immunity, from whence Maryland imported its concept of governmental immunity. *See, Godwin v. County Commissioners of St. Mary's County,* 256 Md. 326, 260 A.2d 295 (1970). The doctrine of sovereign or governmental immunity,[4] in its essence, bars tort litigation against a sovereign,

---

**4.** Traditionally, sovereign immunity was the term used to describe that immunity enjoyed by the State while governmental immunity was the term used to refer to the immunity enjoyed by a county or municipality. In *Maryland–National Capital Park and Planning Commission v. Kranz,* 308 Md. at 625–626, 521 A.2d 729, the Court of Appeals noted that the two terms are often used interchangeably and thereby removed the semantic distinction between the terms. *See*

*i.e.,* a government. The Maryland doctrine has survived repeated challenges over the years and remains a formidable obstacle to those who attempt to sue a governmental entity. *Leese v. Baltimore County,* 64 Md.App. 442, 477, 497 A.2d 159, *cert. denied,* 305 Md. 106, 501 A.2d 845 (1985). Consequently, the doctrine of governmental immunity is alive and well in Maryland today. *See, e.g., Clea v. Mayor and City Council of Baltimore,* 312 Md. 662, 541 A.2d 1303 (1988).

The doctrine, however, does not treat all governmental units equally. The doctrine, except for various erosions by statute, *see, e.g.,* Md. State Gov't Code Ann. § 12–101 *et seq.,* grants the State a near-complete immunity from tort litigation while municipalities and counties have a more limited immunity from such litigation. *See, Maryland–National Capital Park and Planning Commission v. Kranz,* 308 Md. 618, 521 A.2d 729 (1987); *Katz v. Washington Suburban Sanitary Commission,* 284 Md. 503, 397 A.2d 1027 (1979) (state immunity); *Tadjer v. Montgomery County,* 300 Md. 539, 479 A.2d 1321 (1984); *Bradshaw v. Prince George's County,* 284 Md. 294, 396 A.2d 255 (1979); *American Structures v. Mayor and City Council of Baltimore,* 278 Md. 356, 364 A.2d 55 (1976) (county and municipal immunity). In the case *sub judice,* we are concerned with the law of immunity relative to a county.

Counties have never been given immunity from contract actions; in tort actions, they are not immune with regard to those matters categorized as "proprietary" but are immune with regard to those matters categorized as "governmental." *Maryland–National Capital Park and Planning Commission v. Kranz,* 308 Md. at 622, 521 A.2d 729; *Tadjer v. Montgomery County,* 300 Md. at 546–550, 479 A.2d 1321; *Burns v. City of Rockville,* 71 Md.App. 293, 297, 525 A.2d 255 (1987). The distinction between "govern-

*also, Burns v. City of Rockville,* 71 Md.App. 293, 297–298, 525 A.2d 255 (1987).

mental" and "proprietary" functions has been described as illusory. *E. Eyring Co. v. City of Baltimore*, 253 Md. 380, 382–383, 252 A.2d 824 (1969); *Mayor and City Council of Baltimore v. State, ex rel. Ahrens*, 168 Md. 619, 624–625, 179 A. 169 (1935). Notwithstanding the illusory nature of the distinction, the Court of Appeals has enunciated a test to aid in the determination of whether a function is "governmental" or "proprietary." In *Mayor and City Council of Baltimore v. State, ex rel. Blueford*, 173 Md. 267, 195 A. 571 (1937), the Court stated:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature.

173 Md. at 276, 195 A. 571.

In *Tadjer v. Montgomery County, supra,* the Court of Appeals simplified the *Baltimore* test by stating it as:

> [W]hether the act performed is for the common good of all or for the special benefit or profit of the corporate entity.

300 Md. at 547, 479 A.2d 1321.

Seizing upon the appearance of the word "profit" in both expressions of the test, appellant asserts that she should have been given an opportunity, as were the plaintiffs in *Tadjer,* to develop factually whether the courthouse operated at a profit for appellee. *Tadjer* is simply not apposite. It dealt with a type of operation, a landfill, that had never been adjudged to be a governmental function and which, depending upon the facts in a given case, might be operated either for profit or strictly for the common good. Thus, a factual hearing was warranted in *Tadjer.* In the case *sub judice,* appellant is confronted with *Harford County v. Love,* 173 Md. 429, 196 A. 122 (1938), in which the Court of Appeals stated:

*The maintenance of a court house is a distinctive function of government.* It is requisite for the convenient administration of public justice. The buildings devoted to that primary purpose in the counties are also customarily used by the county commissioners in the performance of their functions as the governing body of the county, and by other officials who are engaged in rendering essential public services. The judicial and administrative purposes to which such buildings are devoted necessarily impress them with a governmental character.

173 Md. at 433, 196 A. 122 (emphasis added).

 The pellucid import of this language is that the function of a courthouse is, as a matter of law, a "governmental" function. The clarity of the *Love* decision—that a courthouse is a "governmental" function—is echoed by the decisions of Maryland's sister jurisdictions. *See, e.g., Wilmoth v. Henry County*, 251 Ga. 643, 309 S.E.2d 126 (1983); *Griggs v. City of Goddard*, 233 Kan. 915, 666 P.2d 695 (1983); *Moores v. Fayette County*, 418 S.W.2d 412 (Ky. 1967); *Brooks v. Baldwin County*, 273 Ala. 138, 135 So.2d 816 (1961); *Zapf v. Board of Chosen Freeholders, Middlesex County*, 87 N.J.Super. 426, 209 A.2d 660, *cert. denied*, 45 N.J. 586, 214 A.2d 26 (1965); *State ex rel., State Highway Commission v. Board of County Commissioners of Dona Ana County*, 72 N.M. 86, 380 P.2d 830 (1963); *Banks v. Downing*, 46 Del. 127, 78 A.2d 865 (1951); *Hartness v. Allegheny County*, 349 Pa. 248, 37 A.2d 18 (1944). Based upon the authority of *Love* and upon the fact that a courthouse functions "for the common good of all," *see, Tadjer v. Montgomery County*, 300 Md. at 547, 479 A.2d 1321, we have no hesitancy in affirming the circuit court's ruling that maintaining the courthouse is, as a matter of law, a "governmental" function. Accordingly, appellee, while conducting that "governmental" function, is entitled to its immunity against tort actions for the function of operating the courthouse.

## II.

Appellant's second assertion is that the circuit court erred in not ruling that the Montgomery County Building Code waived appellee's immunity with respect to maintenance of the courthouse. Appellant relies on *Heiden v. City of Milwaukee*, 226 Wis. 92, 275 N.W. 922 (1937) for her assertion. In *Heiden*, a woman slipped and fell on the grounds of a school building owned by the City of Milwaukee. The woman sued the city, the city responded with the defense of immunity, and the Supreme Court of Wisconsin held that the city, in operating the school, was performing a governmental function. Notwithstanding this holding, the Court noted that the woman's suit was grounded solely upon Wisconsin's "Safe Place" statute. The "Safe Place" statute required that all buildings—public and private—be maintained in a safe manner. Because the Wisconsin Supreme Court concluded that

> owners of public buildings [ ] should be subject to the 'safe place' statute regardless of whether at a given time they are acting in a proprietary or governmental capacity and that [the public owners] may be liable to a frequenter who is injured in one of their public buildings . . .,

226 Wis. at 101, 275 N.W. at 926, it held that implicit in the "safe-place" statute was an intent to override governmental immunity. Appellant asserts that the Montgomery County Building Code carries a similar intent, and thereby waives appellee's immunity relative to the courthouse. We disagree and explain.

We begin by noting that appellee has steadfastly maintained and asserted its immunity when faced with tort actions. *See, e.g., Tadjer v. Montgomery County*, 300 Md. 539, 479 A.2d 1321 (1984); *Quecedo v. Montgomery County*, 264 Md. 590, 287 A.2d 257 (1972); *Irvine v. Montgomery County*, 239 Md. 113, 210 A.2d 359 (1965). *See also, Quecedo v. Montgomery County*, 264 Md. at 594, 287 A.2d 257 (Montgomery County has not legislatively revoked or waived its tort immunity). *Compare* Charter, Prince George's County, § 1013 (wherein Prince George's County

has waived its tort immunity). From the foregoing, it is clear that appellee has not generally revoked or waived its immunity. Therefore, appellant must rely on a specific statutory provision in order to sustain its claim that appellee has waived its immunity.

 In examining a piece of legislation to determine whether it effectively waives immunity, we strive to effectuate the intent of the legislation. *Katz v. Washington Suburban Sanitary Commission*, 284 Md. at 513, 397 A.2d 1027; *Weaver v. Prince George's County*, 281 Md. 349, 365, 379 A.2d 399 (1977); *Board of Trustees of Howard Community College v. John K. Ruff, Inc.*, 278 Md. 580, 588, 366 A.2d 360 (1976). A legislative waiver of immunity is ineffective unless specific legislative authority to sue is given *and* unless there are funds available for the satisfaction of the judgment, or power is reposed in the defendant for the raising of funds necessary to satisfy a recovery against it. *Katz v. Washington Suburban Sanitary Commission*, 284 Md. at 513, 397 A.2d 1027; *American Structures v. Mayor and City Council of Baltimore*, 278 Md. at 359, 364 A.2d 55; *University of Maryland v. Maas*, 173 Md. 554, 559, 197 A. 123 (1938); *State v. Rich*, 126 Md. 643, 645, 95 A. 956 (1915). To constitute an effective waiver, therefore, the Montgomery County Building Code must contain both a *clear* waiver of the County's immunity and an authorization for the appropriation of funds to satisfy a judgment rendered against it.[5]

As noted *supra*, it is the intent of a piece of legislation that is determinative on the issue of a waiver of governmental immunity. While legislative intent is often illusive, the Montgomery County Building Code presents us with an express paragraph of intent. That paragraph states:

*Intent.* This chapter shall be construed to secure its expressed intent which is to insure public safety, health

---

5. For legislative enactments conforming to these requirements, *see,* Md. State & Gov't Code Ann. § 12-201 *et seq.;* Charter, Prince George's County, § 1013.

and welfare insofar as they were affected by building construction, through structural strength, adequate egress facilities, sanitary equipment, light and ventilation and fire safety and in general, to secure safety to life and property from all hazards incident to the design, erection, repair, removal, demolition or use and occupancy of buildings, structures or premises.

Mont. County Code, § 8–1(b).

As is apparent, there is no mention of any specific authority to sue appellee for an alleged violation of this chapter committed by appellee. In fact, in all of Chapter 8 of the County Code there is no mention of any authority to sue. Consequently, there is no specific legislative authority in Chapter 8 that would act as a waiver of appellee's immunity. Notwithstanding this lack of specific legislative authority, appellant would have us infer that authority because Chapter 8 is made applicable to all buildings in Montgomery County, public and private. We decline to do so because, unlike the *Heiden* case, the legislation *sub judice* contains not even the slightest hint that it was meant to waive appellee's governmental immunity. What appellant would have us do is act legislatively and infer an intent not justified by the legislation itself. This we will not do. *See, Dunne v. State,* 162 Md. 274, 288–289, 159 A. 751, *appeal dismissed,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932) (waiver of immunity is not to be presumed).

Montgomery County has elected to follow a policy of steadfastly adhering to its governmental immunity. This policy decision is well within the county's prerogative and is not one that we will disturb. Any abrogation or waiver of immunity must emanate from the legislature, *i.e.,* the Montgomery County Council, *Quecedo v. Montgomery County,* 264 Md. at 595, 287 A.2d 257; *Robinson v. Board of County Commissioners,* 262 Md. 342, 345, 278 A.2d 71 (1971) (abrogation); *Katz v. Washington Suburban Sanitary Commission,* 284 Md. at 513, 397 A.2d 1027; *American Structures v. Mayor and City Council of Baltimore,* 278 Md. at 359, 364 A.2d 55 (waiver), and not by judicial

fiat. Since there is no specific legislative intent that would allow a suit against appellee and since such a waiver can not be presumed, we hold that the Montgomery County Building Code does not act as a waiver of appellee's governmental immunity for any alleged violation of that code.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.